Richard H. Dolan
Partner

212 612-1219
rhd@schlamstone.com

Schlam Stone & Dolan LLP

26 Broadway, New York, NY 10004
Main: 212 344-5400   Fax: 212 344-7677
schlamstone.com

November 2, 2022

BY ECF

Hon. Catherine O'Hagan Wolfe
Clerk, United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *Kasiotis v. New York Black Car Operators' Injury Compensation Fund, Inc.*, 2d Cir. Dkt. 22-2061

Dear Ms. Wolfe:

Defendant-Appellant New York Black Car Operator's Injury Compensation Fund, Inc. ("Defendant-Appellant" or the "Fund") submits this supplemental letter-brief pursuant to the order of the Court dated September 27, 2022 (ECF No. 1).

In this supplemental brief, we respond briefly to the Court's questions at oral argument on December 8, 2021 regarding the substantive issues raised by this appeal. In doing so, we will not burden the Court by repeating the arguments in our briefs on the prior appeal (Appeal No. 20-3955).

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 2

A.

During oral argument, the Court questioned both the Fund's counsel and Plaintiff's counsel extensively as to Plaintiff's position that any tip paid by a black car customer is separate and distinct from the service provided by the driver and thus may not be included in the amount on which the surcharge is applied.

First, an attempt to determine whether a non-cash tip given to a driver is provided "in exchange for the service" is misguided. The statute does not say that the Fund can only assess the surcharge on amounts "paid in exchange for the service" or "in exchange for the ride." Plaintiff's argument requires reading into the statute a provision that is simply not there while at the same time reading out of the statutorily defined term "covered services" the word "covered." To do so violates the well-settled standards governing statutory interpretation.

"We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product*

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 3

*Safety Commission et al. v. GTE Sylvania, Inc. et al.*, 447 U.S. 102 (1980). The Supreme Court has stated "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). For that reason, "when the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.*; *see also, Van Buren v United States*, __U.S. __ , __, 141 S. Ct. 1648, 1657 (2021) ("When 'a statute includes an explicit definition' of a term, 'we must follow that definition, even if it varies from a term's ordinary meaning.'") (quoting *Tanzin v. Tanvir*, 592 U. S. __, __, 141 S. Ct. 486, 208 L. Ed. 2d 295, 301 (2020)); *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) ("The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.").

Here, the statute plainly says that the surcharge may be applied to the "invoices," "billings" or "credit payments" "for covered services." (A. 101 (§160-jj(2)).)[1] And the statute provides an explicit definition of "covered

---

[1] Citations to "A. []" are to the Joint Appendix filed in the prior appeal, Appeal No. 20-3955, ECF Nos. 20 – 23.

services," which turns solely on the geographical location from which the trip begins and where it ends. (A. 91 (§ 160-cc(4))) (defining "covered services" as "all dispatches" "from or by a central dispatch facility located in the state" and "all dispatches" "from or by a central dispatch facility located outside the state . . . involving a pick-up in the state.").)

In short, Plaintiff asks this Court to ignore the well-settled law requiring a court to apply the statutory definition of the term "covered service," and instead substitute a different meaning of the Court's own invention. The error by the District Court was accepting Plaintiffs' invitation by doing precisely that.

B.

Even on its own terms and accepting *arguendo* Plaintiff's redefinition of the term "covered service," Plaintiff's argument still fails. A tip to a driver is provided in exchange for the service provided by the driver—the ride. But for the ride, there would never have been any tip. Thus, Plaintiff's argument that a tip given to a driver is not provided "in exchange for the driver's service" is a poor fit for both the statute and the facts.

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 5

Indeed, nearly a century ago, the New York courts reached that common-sense conclusion by expressly rejecting an argument that voluntary tips provided to a taxi driver were not provided in exchange for the taxi driver's services. As the Appellate Division explained at length:

> The employee could not have received the tips if the employer had not put him in the way of getting them, and we may well conclude that the tips were an advantage received from the employer similar in effect to board, lodging or rent furnished in addition to the money wages paid. Many times a guest at a hotel, a passenger upon a sleeper or a person receiving service from the employee of another, is glad to recompense a pleasing manner or an extra service by a reasonable tip; but according to the present custom tips are not usually the voluntary act of the person who gives them. The employee with the knowledge and consent of the employer, furnishes a service which compels the payment of a tip, and if the tip is not paid the service is so grudgingly and unsatisfactorily given that the person served is willing to pay it the next time. The person rendering the service considers that the tip is his as matter of right and involves no particular favor; an extra large tip may be appreciated, but the ordinary tip is considered a payment of money actually due. … **The whole theory of tipping, as at present understood in the usual practice, is a payment made in order to get reasonable service**, and is an exaction made or permitted by the employer so that his patrons shall help him pay the wages which are fairly due from him to his employee. The custom and the manner in which the payment of tips is enforced and practiced leads inevitably to the conclusion that in substance the tips received are a part of the wages of the employee, and are advantages received by the employee from the employer **as a part recompense for services rendered.**

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 6

*Sloat v. Rochester Taxicab Co.*, 177 A.D. 57, 59-60 (3d Dep't 1917) (emphasis added).

At issue in *Sloat* was whether the tips received by a deceased taxicab driver should be considered a part of his wages for calculation of the Workers' Compensation benefits owed to his beneficiary. *Id.* The Appellate Division held that the tips he received were paid **in exchange for providing a service—a ride—to his passengers,** and thus should be considered part of his wage. *Id.* at 905. Thus, the case refutes Plaintiff's position here that tips were given for some reason other than the service provided by the driver.

C.

*Sloat* also speaks to the second question raised by this Court at oral argument regarding the application of the Workers' Compensation Law and the calculation of a driver's "weekly average wage". At oral argument, the Court asked about the legal authority for the Fund's position that a driver's non-cash tips are included in her "average weekly wage," and thus increase the calculation of compensation owed to that driver should she be injured on the job. This question, too, is answered by *Sloat,* as well as subsequent

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 7

case law and the plain language of the Workers' Compensation Law. That Law not only provides that tips must be included in the calculation of a black car driver's average weekly wage, but also expressly provides that the Fund is bound by that Law's provisions.

Workers' Compensation Law ("WCL") Section 14 provides that the compensation owed to an employee injured on the job is based on the calculation of his "average weekly wage" prior to his injury. Section 2(9) of the WCL defines wages as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including the reasonable value of board, rent, housing, lodging or similar advantage received from the employer."

In *Sloat*, the Third Department determined that voluntary tips received by a taxi driver from passengers as a regular part of his income are to be treated, for purposes of determining an employees' wage pursuant to WCL § 14, "as a part of the compensation to be received by the employee for the services rendered the employer -- a part of the wages, a part of the average annual earnings of the employee." 177 A.D. at 60. In so holding, the court concluded that tips received by a taxi driver are "similar in effect

to board, lodging or rent furnished in addition to the money wages paid." *Id.* at 59.

Over the intervening century since *Sloat,* New York courts have repeatedly affirmed that tips or gratuities regularly received by an injured employee are to be considered in calculating her "average weekly wage" in order to determine the amount owed to her under the WCL. *See, e.g.*, *Weinberg v D-M Rest. Corp.*, 53 N.Y.2d 499, 506 (1981) (recognizing the principle that "tips may constitute compensation to an employee for purposes of the Workers' Compensation Law"); *Matter of Yu Ping Jin v Chen Dun Kai*, 89 A.D.3d 1249, 1250 (3d Dep't 2011) ("[T]ips must be included in any calculation of decedent's average weekly wage" pursuant to Workers' Compensation Law where "tips were a regular component of decedent's income"); s*ee also* Decision of New York State Workers' Compensation Board, 2012 N.Y. Wrk. Comp. LEXIS 12180, *7, 2012 N.Y. Wrk. Comp. 0183197 (Nov. 14, 2012) ("The Court has held that when it is conceded that

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 9

tips are a regular part of the claimant's income, tips must be included in the calculation of the average weekly wage."). [2]

During oral argument, the Court asked whether the WCL applies here, or if the Fund was exempted from application of the WCL. Again, the statutory text answers that question. The WCL expressly includes the Fund in the definition of an "employer" and black car drivers in the definition of "employees." Specifically, WCL § 2(3) provides: "Notwithstanding any other provision of this chapter, and for purposes of this chapter only, the employer of a black car operator, as defined in article six-F of the executive law, shall, on and after the fund liability date, as defined in such article, be the New York black car operators' injury compensation fund, inc. created pursuant to such article". Similarly, WCL § 2(4) provides: "Notwithstanding any other provision of this chapter, and for purposes of this chapter only, a

---

[2] The WCL is not the only statute in New York requiring that gratuities be included in calculating an individual's wages or pay. As the court noted in *Raskin v Corsi*, 270 A.D. 451, 453 (3d Dept' 1946), gratuities are included in the definition of "renumeration" earned by an unemployed individual, which forms the basis for the calculation of unemployment insurance to be paid by employers as well as benefits payable to unemployed individuals, pursuant to New York's Unemployment Insurance Law. *See also* N.Y. Labor Law § 517 (Consol., Lexis Advance through 2022 released Chapters 1-563)).

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 10

black car operator, as defined in article six-F of the executive law, shall, on and after the fund liability date, as defined in such article, be an 'employee' of the New York black car operators' injury compensation fund, inc. created pursuant to such article."

### D.

At oral argument, the Court asked two questions regarding whether the Court should defer to the Fund's interpretation of its governing statute: (1) whether deference to the Fund's interpretation is appropriate because the legislature delegated authority to the Fund to determine how best to assess the surcharge; and (2) whether deference is appropriate because the Fund has reasonably relied upon its interpretation, creating a reliance interest. The answer, in both cases, is yes.

Of course, there is no issue about deference under *Chevron* or its New York equivalent if, as we showed above, the governing statute here—and particularly its definition of "covered service"—is not ambiguous. But if the Court disagrees with our argument on that point, the Court should defer to the Fund's reasonable interpretation of its governing statute because the legislature clearly and intentionally delegated policy-making authority to

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 11

the Fund to set not only the amount of the surcharge, but also the manner in which it is to be assessed. As the Supreme Court explained *in National Cable & Telecommunications Association v Brand X Internet Servs.*, 545 U.S. 967, 980 (2005):

> In *Chevron*, this Court held that ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion. Filling these gaps, the Court explained, involves difficult policy choices that agencies are better equipped to make than courts. 467 U.S., at 865-866, 81 L. Ed. 2d 694, 104 S. Ct. 2778. If a statute is ambiguous, and if the implementing agency's construction is reasonable, Chevron requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation

While several justices of the Supreme Court have questioned the holding of *Chevron* even though the Court has declined to overrule it, the dispositive fact here is that the New York courts have independently adopted the *Chevron* rule as a matter of New York law:

> The most important underlying principles requiring deference are either when the nature of the legislation is such that the agency has a greater competence in interpreting the statute than the courts or when the policy-making function necessarily entailed in interpreting broad statutory language has been conferred by the Legislature on the agency and not the courts.

*Judd v Constantine*, 153 A.D.2d 270, 273 (3d Dep't 1990); *see also* R*aritan Dev. Corp. v Silva*, 91 N.Y.2d 98, 102 (1997) ("[W]hen applying its special expertise in a particular field to interpret statutory language, an agency's rational construction is entitled to deference."); *Matter of O'Brien v Spitzer*, 7 N.Y.3d 239, 242 (2006) ("Deference is appropriate where the question is one of specific application of a broad statutory term.") (internal quotations omitted). Both are true here.

**First**, the Fund has greater expertise in interpreting this statute than the judiciary because the Fund, on a daily basis, deals with the "invoices," "billings," and "credit payment" for "covered services," and has been delegated the authority to collect the surcharge from black car bases. Indeed, the testimony by Fund representatives, particularly Fund board member John L. Acierno, shows what such invoices, billings and credit payments look like and how they operate in practice. (A. 56 – 70.)

**Second**, the New York legislature conferred on the Fund "the policy-making function necessarily entailed in interpreting broad statutory language." 153 A.D. 2d at 273. Specifically, the New York

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 13

legislature gave the Fund its policymaking function to "establish" in its plan of operation "a procedure for determining and collecting the appropriate amount of surcharges and assessments." (A. 97.) The legislature's use of the word "appropriate" in the statute strongly supports the conclusion that the Fund was empowered to decide all questions about how the surcharge was to apply. And the Fund's power to "establish . . . a procedure" necessarily includes the right to define the base value on which to assess the surcharge as well as whether to include or exclude tips.

The legislature also gave to the Fund the power to collect that surcharge from black car bases. (*Id.*) And the legislature conferred on the Fund the power to enforce a member base's obligation to pay the surcharge. Specifically, the statute provides that "[i]f the fund believes that a central dispatch facility has failed to pay the fund the assessments due pursuant to this article . . . it shall make a referral to the local licensing authority or, in the absence of a local licensing authority, to the department. Upon receipt of such a referral, the local

licensing authority or the department **shall be required to hold a hearing** . . . ."  (A. 107 (§160-oo(1)(b) (emphasis added)).)

Given the legislature's decision to delegate broadly to the Fund in these matters, the conclusion follows naturally that the legislature also empowered the Fund to define the scope of the statutorily mandated surcharge.

In addition, as a "quasi-governmental" entity created by the New York legislature with such expansive powers being expressly delegated to it, the Fund is entitled to the same deference in its construction of its organic statute as would be given to a State agency.  The purpose of New York's version of the *Chevron* doctrine, as explained by the cases above, is that agencies have specific expertise that render them better equipped to make the "difficult policy choices" in construing ambiguous or broad statutory terms than do the courts.  The Fund has that expertise.  The Fund's determination that, under this statute, the mandatory surcharge applies to the entire invoice—including the non-cash tips separately detailed on the invoice—is eminently reasonable, and this Court should defer to that reasonable interpretation.

E.

The Court should also defer to the Fund's interpretation of the statute because that interpretation has been consistent since the Fund's creation and went unchallenged from 1999 to 2018. The Fund reasonably relied on its interpretation of the statute since its creation more than 20 years ago. *Matter of County of Albany v Hudson Riv.-Black Riv. Regulating Dist.*, 97 A.D.3d 61, 66 (3d Dept 2012) ("[W]hen a statute may be read as susceptible to more than one reasonable interpretation, 'judicial deference should be accorded an agency's interpretation of a statute . . . **[if] the agency's interpretation has been long standing and unchallenged, inducing reliance thereon**.") (emphasis added) (internal quotations omitted).

From the Fund's creation in 1999, until Plaintiff brought this action in 2018, the Fund consistently assessed the surcharge on any non-cash tips, and no one ever challenged this practice. (A. 58 (Declaration of John L. Acierno) ("Acierno Decl.") ¶ 11 ("Consistent with the language of the statute, the Fund has always applied the surcharge to the entire 'invoice or billing' the member base sends to, or the entire 'credit payment' it charges to, the customer, including any non-cash tips . . . .").) Indeed, this practice

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 16

likely never would have been challenged but for the creation of "app-based" services like Uber and, specifically, the ability for riders to add non-cash tips to the bill via the app. With that change in technology, the practice of adding non-cash tips to the charge for the ride exploded, and the Fund appropriately applied the surcharge to the entire amount of the bill including the tips. It was only then that Plaintiff's counsel (who admits having created the entire theory for this lawsuit) saw a potential windfall and worked to find a named plaintiff to sue.

For this nearly twenty-year period, the Fund, as well as its member bases, relied on its interpretation of the statute permitting it to collect the surcharge on non-cash tips. The Fund based its actuarial and reserve calculations as well as the payment of workers' compensation benefits on its collection of the surcharge, including on non-cash tips. It would be unreasonable to require the Fund not only to pay damages of over $8 million in collected surcharges on tips, but also potentially substantial administrative costs and pre- and post-judgment interest, class administration fees, and class counsel fees, all for simply continuing to apply a reasonable interpretation of its governing statute for the past

Hon. Catherine O'Hagan Wolfe
November 2, 2022
Page 17

twenty years. Indeed, one possible result of such a judgment against the Fund could be that the Fund may be required to raise the surcharge rate (which currently stands at 3%), which it has the sole statutory authority to do, in order to pay any such judgment. (A. 59 (Acierno Decl.) ¶¶ 13 – 15.)

## CONCLUSION

For the reasons set forth above, as well as those set forth in the Fund's briefs and at oral argument in Appeal No. 20-3955, the Fund respectfully requests that the Court reverse the District Court's order and grant summary judgment in favor of the Fund dismissing this action in its entirety, together with such other relief to the Fund as the Court deems just.

Respectfully Submitted,

/s/ Richard H. Dolan

Richard H. Dolan

cc: Jeffrey I. Carton, Esq. (by ECF)