

2 Westchester Park Drive, Suite 410
White Plains, NY 10604
Tel: 914-331-0100
Fax: 914-331-0105
www.denleacarton.com

November 29, 2022

BY ECF

Hon. Catherine O'Hagan Wolfe
Clerk, United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

  Re: *Kasiotis v. New York Black Car Operators' Injury Compensation Fund, Inc.*, 2d Cir. Dkt. 22-2061

Dear Ms. Wolfe:

  Plaintiff-Appellee Joseph Kasiotis ("Plaintiff-Appellee") submits this supplemental letter-brief pursuant to the Court's September 27, 2022 order (ECF No. 1), and in response to the November 2, 2022 supplemental letter-brief (the "Fund's Supp. Br.") filed by the Defendant-Appellant Fund. We employ the same initial capitalized defined terms as we used in our prior brief filed in appeal No. 20-3955 ("Plaintiff-Appellee Prior Br.").

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 2

# ARGUMENT

## I. The District Court Correctly Held That the Plain Language of the Statute Does Not Permit the Fund's Surcharge on Voluntary Tips

The District Court correctly followed well-settled standards of statutory construction to interpret the plain meaning of "covered services" under the statute, and properly determined that "nothing in the statute empowers the [F]und to add the surcharge to a noncash tip." (SPA. 12.) The Fund's supplemental brief slavishly repeats its argument that the meaning of "covered services" "turns solely" on the geographic beginning and end of a trip. (Fund's Supp. Br. pp. 3-4). In doing so, however, the Fund asks this Court to ignore the very statutory interpretation standards which the Fund itself claims should be followed, and skips over the word "dispatches" that is a critical component of the statutory definition of "covered services," as well as the word "services" itself. *See* N.Y. Exec. Law § 160-cc(4) (referring four times in the definition of "covered services" to "dispatches," a word that is not otherwise defined in N.Y. Exec. Law § 160-cc or elsewhere in Article 6-F of the New York Executive Law). The District Court properly rejected the Fund's approach, and correctly concluded that "covered services" means dispatched transportation "services" with certain "covered" geographic parameters tied to New York state. (SPA. 8-10.)

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 3

The Fund is only authorized by the statute to collect a surcharge on "invoices or billings" and "credit payments" for "covered services." Thus, the District Court properly determined that the Fund's surcharge can only be applied to charges for the "covered services" (*i.e.*, the dispatched transportation services) and not to voluntary tips that a passenger may decide to pay "separate and apart from the agreed-upon charge for the service, namely, here the dispatch, *i.e.*, the picking up and discharging of passengers." (SPA. 8-10.)

The District Court's conclusion that the Fund's surcharge cannot be applied to voluntary tips because such tips are not part of the charges for the provided transportation services is reinforced by the meaning of the word "surcharge" itself. A surcharge is an additional amount charged above the existing price charged for goods or services. *See Expressions Hair Design v. Schneiderman*, 808 F.3d 118, 127-128 (2d Cir. 2015) (adopting the ordinary meaning of "surcharge" which was used, but not defined in, N.Y. G.B.L. § 518; the statute prohibited retailers from imposing a "surcharge" above existing prices on customers paying with a credit card), *vacated on other grounds*, 581 U.S. 37 (2017) (vacating the Second Circuit decision on the grounds that N.Y. G.B.L. § 518 may unconstitutionally restrict speech). *See also* https://www.investopedia.com/terms/s/surcharge.asp ("The term surcharge refers to an additional charge, fee, or tax that is added to the cost of a

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 4

good or service beyond the initially quoted price."); 

https://www.vocabulary.com/dictionary/surcharge ("A *surcharge* is an extra amount of money you have to pay when you buy something. If you purchase your concert tickets online instead of at the box office, you'll have to pay a five-dollar *surcharge*.").

The Fund's argument that a voluntary tip "is provided in exchange for the service provided by the driver" is incorrect. (Fund's Supp. Br. p. 4). The payment of the charges for the service that the customer agreed, and is obligated, to pay is the payment in exchange for the transportation service. No additional payment is required, and no additional payment may be made. By contrast, a voluntary tip or gratuity, if any, is entirely in the customer's discretion, in addition to the payment made in exchange for the service, and a gift in *appreciation or recognition of*, and not in *exchange for*, the service. (*See* Plaintiff-Appellee Prior Br. pp.15-17; SPA 9-10.)

The Fund quotes extensive verbiage from a single, more than 100-year-old Third Department decision, *Sloat v. Rochester Taxicab Co.*, 177 A. D. 57 (3d Dep't 1917), to suggest incorrectly that the "New York courts" have rejected the "argument that voluntary tips" "were not provided in exchange for the taxi driver's services." (Fund's Supp. Br. p. 5). However, the *Sloat* court quotation cited by the

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 5

Fund makes clear that the tips at issue for the taxi driver in *Sloat* in the early part of the last century were "not usually the voluntary act of the person who gives them" and considered "a payment of money actually due" and "part payment of wages which the employer compels the person served to pay," 177 A. D. at 60, all of which the District Court below correctly found was not the case with respect to the voluntary tips at issue here. (SPA. 9-11.)

The Workers' Compensation Law ("WCL") is not relevant to this Court's review of the District Court's determination that Article 6-F of the New York Executive Law -- a completely different and later adopted statute that created the Fund -- does not permit the Fund to add a surcharge to voluntary non-cash tips because such non-cash tips are not part of an invoice, billing, or credit payment of "covered services." It has never been disputed that the statute here established the Fund for the purpose of providing workers' compensation benefits to black car drivers in the state of New York and to that extent the Fund is subject to the WCL. (*Compare* Plaintiff-Appellee Prior Br. p. 5 *with* Fund's Supp. Br. pp. 9-10.) However, the text of the WCL, and the fact that the Fund provides workers' compensation benefits to drivers, has no bearing on whether the Fund is empowered to impose the surcharge on voluntary non-cash tips paid by consumers under the statute at issue here.

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 6

The question addressed at pages 6 to 9 of the Fund's Supp. Br. as to whether voluntary non-cash tips paid to black car drivers should be part of the calculation of the black car driver's "average weekly wage" under the WCL is not before, and need not be answered by, this Court. It is irrelevant. In fact, the Fund points to nothing in either the statutory language or the legislative history of Article 6-F of the New York Executive Law that permits the surcharge to be imposed on tips or anything else that may constitute part of the "average weekly wage" of drivers under the WCL, or that makes any reference to the phrase "average weekly wage" in determining the applicability of the surcharge.

Similarly, nothing in the statute here requires a proportionate relationship between the underlying charges for transportation services on which the surcharge is imposed to raise revenue for the Fund and the components of an "average weekly wage" of an injured employee under the WCL that may bear on the liability of the Fund. The Fund's own behavior also shows there is no such proportionate relationship because the Fund has not confined the surcharge only to charges that may be part of the calculation of the driver's "wages" under the WCL. For example, the Fund has no "increased exposure" because of tolls or parking or "telephone use" that are clearly not part of a driver's wages under the WCL, yet the Fund collects its surcharge on those items. (A.358-59 at VIII(6).) As another

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 7

example, the Fund claims that it has the authority under the statute here (which is does not currently exercise) to impose the surcharge on New York sales tax even though sales tax also has no connection to a driver's "wages" under the WCL or otherwise. (Fund's March 5, 2021 Appeal Brief, pp. 30-31.)[1]

Putting aside its irrelevancy for the sake of argument, the legal question as to whether voluntary non-cash tips should be part of the calculation under the WCL of the "average weekly wage" of present-day black car drivers has not been, as the Fund erroneously suggests, settled by the New York courts or the court decisions cited by the Fund. Notably, the Fund does not cite any court decision that addresses, let alone answers, whether voluntary tips paid to present-day black car drivers must be included in calculating the "average weekly wage" under the WCL. (*See* Fund's Supp. Br. p. 8.)

Under WCL § 2(9) "wages" "means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including the reasonable value of board, rent, housing, lodging or similar advantage *received from the employer* . . .". WCL § 2(9) (emphasis added). Thus,

---

[1] The Fund claims that it has voluntarily refrained from imposing the surcharge on New York sales tax under a purported agreement with New York State Department of Taxation and Finance, but there is no evidence of such an agreement. (A.805-07; SPA. 8.)

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 8

on its face the WCL does not include tips paid by consumers (or anything else not actually paid or provided by the *employer* to the employee) as part of "wages" for purposes of determining "average weekly wages" under the WCL.

The Fund's reliance on *Sloat* to argue that voluntary tips paid to present-day black car drivers must be included in calculating the "average weekly wage" under the WCL is misplaced. The Third Department in *Sloat* found that the employer of the Rochester, New York taxi driver in 1917 paid a lower weekly wage of $12 in contemplation that the driver would also receive tips of $5.10 per week to ensure that the employee received on average $17.10 per week for his work for his employer. 177 A. D. at 58-59. The *Sloat* court also found that the tips at that time did not reflect a voluntary act, but were instead permitted by an employer so the employer's patrons "shall help him [the employer] pay the wages which are fairly due from him [the employer] to his employee" and that both the employer and employee treated the tips as wages paid by the employer. 177 A. D. at 60-61. Based on the custom, practice, and role of tips for taxi drivers in Rochester in the early 1900s, the *Sloat* court concluded that the tips there were "advantages received by the employee *from the employer* as a part recompense for services rendered" to the employer, and therefore part of "wages" under the WCL. *Id.* (emphasis added).

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 9

In contrast to the circumstances that applied to the Rochester taxi driver in *Sloat* in the early part of the last century, the tips paid to present-day black car drivers are voluntary if and when made. Plus, there is no evidence in the record that black car drivers, including Uber and Lyft drivers, are paid less compensation by their employers in contemplation that the tips that they receive will be part of their 'wages" for services to their employers, or that the tips are treated by both the black car drivers and their employers as part of the recompense paid, in effect, by the employers. Those factual issues were not developed before the District Court because, as set forth above, whether voluntary tips paid to black car drivers constitute "wages" under the WCL is not an issue for determination in this case.

*Matter of Yu Ping Jin v. Chen Dun Kai*, 89 A.D.3d 1249 (3d Dep't 2011) likewise does not support the Fund's contention at page 7 of the Fund's Supp. Br. that "tips must be included in the calculation of a black car driver's average weekly wage . . ." under the WCL. *Yu Ping Jin* involved a workers' compensation claim by the widow of a food delivery worker. The Third Department there affirmed a Workers' Compensation Board finding of an average weekly wage of $780 under WCL § 14 that the employer claimed included tips because the employer conceded that the decedent's average weekly wage was $780. 89 A.D.3d at 1249-1250.

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 10

The *Weinberg v. D-M. Restaurant Corp.*, 53 N.Y.2d 499 (1981) case cited by the Fund is not even a WCL case. In *Weinberg*, the plaintiff restaurant patron sued the defendant restaurant for negligence and damages because the restaurant lost a coat left with the restaurant's checkroom attendant. The *Weinberg* court held that "the tip or gratuity customarily given to a checkroom attendant" is a voluntary payment by the patron to the employee and is not a "'fee or charge . . . exacted'" by the restaurant for the coat-checking service within the meaning of N.Y. G.B.L. § 201. Based on that holding, the *Weinberg* court ruled that the restaurant could not be liable for more than $75 under the liability cap in N.Y. G.B.L. § 201. *Id.* at 505.

The *Weinberg* court merely noted in dicta in a quotation that the Fund clipped short (Fund's Supp. Br. p. 8) that "[t]hough tips may constitute compensation to an employee for purposes of the Workers' Compensation Law . . . it does not follow that a tip to an employee may be regarded for all purposes as compensation to the employee . . . ". *Id.* at 506-507 (emphasis added and citations omitted). More importantly, the *Weinberg* court recognized, like this Court should here, that it was not dealing with a statute concerning the "compensation of the *employee*," but with a different statute concerning a different issue, namely in *Weinberg* "whether the *employer* in permitting gratuities to be paid to the employee has exacted a fee or charge" under N.Y. G.B.L. § 201. *Id.* at 507.

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 11

## II. The District Court Properly Determined That the Fund Is Not Entitled to Any Deference

New York courts do not defer to a state government agency on questions of "'pure legal interpretation of statutory terms.'" *Raritan Dev. Corp. v. Silva*, 91 N.Y.2d 98, 102 (1997) (quoting *Matter of Toys "R" Us v. Silva*, 89 N.Y.2d 411, 419 (1996)). *See also Doctors Council v. NYCERS*, 71 N.Y.2d 669, 676 (1988). While New York courts may show some deference to a rational interpretation of a New York statute by a *state government agency* "when applying its special expertise in a particular field," an agency interpretation that "'runs counter to the clear wording of a statutory provision' is given little weight" by the courts. *Id.* (quoting *Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d. 451, 459 (1980)). No precedent exists for courts to defer to the interpretation of a state statute by a not-for-profit corporation. (SPA. 11-12 (the District Court found that there is no such authority, and the Fund has never cited any).) To the contrary, courts do not defer to New York not-for-profit corporations when reviewing their actions for compliance with the law. *Cf., e.g.*, *Manhattan Eye, Ear & Throat Hosp. v. Spitzer*, 186 Misc. 2d 126, 150 (Sup. Ct. N.Y. County 1999) (showing no deference to a hospital charitable not-for-profit corporation in rejecting its application under N-PCL § 511 for approval of a proposed sale of its assets because, among other

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 12

things, there was no showing that the sale promoted the purposes of the corporation as a hospital).

The Fund is admittedly a New York not-for-profit corporation and not a government agency. Thus, the District Court correctly held that no basis existed to defer to the Fund or give the Fund's interpretation of the statute any weight. (SPA. 11-12.)[2]

The Fund's argument that its interpretation of the statute governing its own conduct is entitled to deference like a government agency because the State

---

[2] The Fund's reference to the Supreme Court's *Chevron* jurisprudence is inapposite because the Fund is not a federal agency. (Fund's Supp. Br. p. 11.) The other cases cited by the Fund all involve an agency that, unlike the Fund here, was expressly given policymaking authority, including the express ability to adopt rules and regulations. *See Judd v. Constantine*, 153 A.D.2d 270 (3d Dep't 1990) (affirming the trial court's determination annulling the decision of the Superintendent of the Division of New York State Police (comptroller) to deny a longevity incremental increase in pay to state troopers because the comptroller incorrectly interpreted the applicable statute); *Raritan Dev. Corp. v. Silva*, 91 N.Y.2d 98 (1997) (rejecting the decision of the New York City Board of Standards and Appeals interpretating the local Zoning Resolution); *Matter of O'Brien v. Spitzer*, 7 N.Y. 3d 239 (2006) (upholding the New York State Attorney General's determination that a lawyer appointed as a referee for the sale of a home in foreclosure is not a state employee for purposes of defense and indemnification by the state in a federal action filed by the homeowner); *Matter of County of Albany v. Hudson River-Black Riv. Regulating Dist.*, 97 A.D.3d 61 (3d Dep't 2012) (upholding in part and rejecting in part the Hudson River-Black River Regulating District's apportionment of costs approved by the Department of Environmental Conservation in response to a challenge under CPLR Article 78, a specific type of New York state court proceeding to challenge decisions of state or local government agencies).

legislature delegated to it certain responsibilities relating to assessing the surcharge overlooks at least two critical facts. (Fund's Supp. Br. pp. 10-14). The legislature deliberately decided to make the Fund a not-for-profit corporation and *not* a government agency. The legislature also specifically delegated the authority to issue rules or regulations under the statute to a specific government agency, the New York Department of State. N.Y. Exec. Law § 160-nn.

Similarly, the statutory requirement that the Fund adopt a plan of operation does not mean that the legislature gave the Fund a "policymaking" function akin to a government agency that warrants deference. (Fund's Supp. Br. pp. 12-13). The plan of operation is the by-laws of the Fund. N.Y. Exec. Law § 160-gg(2.) "'By-laws' means the code or codes of rules adopted for the regulation or management of the affairs of the [not-for-profit] corporation irrespective of the name or names by which such rules are designated." N-PCL § 102(a)(2) (defining by-laws). The statute here simply requires the Fund to adopt by-laws (*i.e.*, the plan of operation) for the administration of the Fund that, at minimum, includes rules to carry out the Fund's purposes <u>within</u> the Fund's statutory authority. N.Y. Exec. Law § 160-gg(2). It does not follow, as the Fund contends, that the statutory requirement that the Fund adopt such by-laws thereby imbued the Fund with the status of a government entity with the power to define the scope of its own authority that

warrants deference from the courts.[3] Rather, a corporation's adoption of by-laws that are contrary to law, like the Fund's imposition of the surcharge on voluntary non-cash tips, may be voided by the courts without deference to the corporation's interpretation of its own authority. *See, e.g.*, *In re Flushing Hospital & Dispensary*, 288 N.Y. 125, 132-133 (1942) (affirming lower court ruling voiding the 1941 amendments to a hospital's by-laws because "[c]hanges in by-laws calculated to give to a group an unreasonable or unfair advantage, which are not adapted to the purposes of the corporation, are void" and finding it irrelevant that "the group which by amendment to the by-laws sought to control the election and thereafter to control the affairs of the corporation may have acted with unselfish motives and in the belief that the new directors would promote the best interests of the corporation and the community"); *Blanc v. Windham Mountain Club, Inc.*, 115 Misc.2d 404 (Sup. Ct. N.Y. County 1982), *aff'd*, 92 A.D.2d 529 (1st Dep't 1983) (affirming that not-for-profit corporation by-laws provision (a hold harmless clause) that is in conflict with state law (N.Y G.O.L. § 5-326) is void and unenforceable, and

---

[3] The Fund self-servingly describes itself as a "'quasi-governmental' entity" purportedly entitled to deference (Fund's Supp. Br. p. 14), but the Fund does not cite any authority for what a quasi-governmental entity is under New York law (or whether such a concept exists), why the Fund should be considered one, and why such a purported entity should be extended any deference in statutory interpretation.

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 15

rejecting the not-for-profit corporation's assertion of that unlawful hold harmless by-laws provision as a defense in a negligence action).

 A government agency's interpretation of a statute that "has been long standing and unchallenged, inducing reliance thereon by those practicing before" the agency, may be a basis for courts to defer to the agency's interpretation. *Judd*, 153 A.D.2d at 272-273. However, that principle does not apply here because the Fund is not a "policymaking agency" and its interpretation of statutory language "is not entitled to any special deference from the courts." (SPA. 11-12). Thus, it is not relevant that the Fund consistently applied, and supposedly "reasonably relied on," its incorrect interpretation of the statute here in unlawfully applying the surcharge to voluntary non-cash tips for many years.

 Even if the Fund were a government agency and reliance was a relevant factor (neither is the case here), the Fund has not shown any reliance that would warrant this Court deferring to its statutory interpretation. Judge Carney correctly observed at oral argument on December 8, 2021, that if the Court disagrees with the Fund on the statutory interpretation question (which it should) there is no evidence of any reliance interest that the Fund "might have had in performing its actuarial work, and creating reserves, and paying out claims and so on," or how eliminating the surcharge on voluntary non-cash tips would "wreak havoc" in the

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 16

Fund's "actuarial calculations and make it difficult, for example, for" the Fund "to pay legitimate claims of drivers." The Fund's counsel conceded that such a ruling will not "wreak havoc" on the Fund, and will not have any impact on legitimate driver claims. In fact, the Fund discontinued the collection of the surcharge on all noncash gratuities almost two years ago in February 2021, and there is no evidence that doing so has had any impact on its financial ability to function and pay driver claims.

In addition, the District Court ruled on the Fund's liability on October 22, 2020. (SPA. 1-23). Thus, the Fund has known for almost two years that it faced potential liability for a judgment for damages in excess of $8 million and other costs associated with a class action judgment. It has had ample time to plan accordingly, including creating a reserve for that liability, to minimize the impact of this Court affirming the District Court's judgment.

The Fund cannot point to any real reliance interest and therefore it argues that the judgment here would cost it money (which is, of course, the very nature of all money judgments), and that it would be "unreasonable" to require the Fund to pay back the money that it collected "by continuing to apply" its interpretation of the statute for 20 years, even if did so in violation of the statute. The Fund cites no authority for such an extraordinary proposition because, simply put, there is none.

Hon. Catherine O'Hagan Wolfe
November 29, 2022
Page 17

(Fund's Supp. Br. pp. 17-18.) The District Court correctly determined that the Fund should be required to return the money it unlawfully collected, and this Court should uphold that determination. (SPA.13 ("the amount [the Fund] collected from its customers constituting the surcharge on noncash tips is a benefit retained by the [Fund] at the [P]laintiff's expense, which retention is against equity and good conscience. Simply put, you took more than you were entitled to take.").)

\*   \*   \*

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in the Plaintiff-Appellee Prior Br. and at oral argument in Appeal 20-3955, Plaintiff-Appellee respectfully requests that the Court affirm the Order of the District Court in its entirety.

Respectfully submitted,

/s/ Jeffrey I. Carton
Jeffrey I. Carton
Steven R. Schoenfeld

Cc: Richard H. Dolan, Esq. (by ECF)